In re Victor D. McGREEVY; Darlene A. McGREEVY, Debtors.

Darlene A. McGREEVY, Plaintiff–Appellant,

v.

ITT FINANCIAL SERVICES, Defendant–Appellee.

No. 91–2160.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1991.

Decided Feb. 5, 1992.

John R. Garza, Garza & Regan, P.A., Rockville, Md., argued (Richard D. Corcoran, on brief), for plaintiff-appellant.

Stephen Norman Goldberg, Cohn & Goldberg, Baltimore, Md., argued (Edward S. Cohn, on brief), for defendant-appellee.

Before HALL, NIEMEYER, and LUTTIG, Circuit Judges.

## OPINION

LUTTIG, Circuit Judge:

Appellant Darlene A. McGreevy appeals a decision by the United States District Court for the District of Maryland affirming a bankruptcy court's denial of her motion to avoid appellee ITT Financial Services' lien on a shotgun and a rifle. The sole issue presented on appeal is whether Mrs. McGreevy's shotgun and rifle constitute "household goods" within the meaning of 11 U.S.C. § 522(f)(2)(A). We agree with the district court and the bankruptcy court that these firearms are not household goods within the meaning of section 522(f)(2)(A), and therefore affirm.

### I.

ITT Financial Services acquired a nonpossessory, nonpurchase-money security interest in certain items of Mrs. McGreevy's personal property, including one shotgun and one rifle, as security for a loan extended to Mrs. McGreevy. Mrs. McGreevy and her husband subsequently petitioned for bankruptcy under Chapter 7 of the Bankruptcy Code. During the pendency of the bankruptcy proceedings, Mrs. McGreevy filed a motion to avoid the lien against the shotgun and the rifle[1] pursuant to 11 U.S.C. § 522(f)(2)(A).[2] The bankruptcy court denied the motion principally on the authority of *In re Barnes*, 117 B.R. 842 (Bankr.D.Md.1990), *see infra* note 6, holding that the rifle and shotgun were not "household goods" within the meaning of section 522(f)(2)(A). App. at 51–55. Mrs.

---

1. Mrs. McGreevy also sought to avoid the lien against her two televisions, a stereo, four other rifles, one other shotgun, a bow, arrows, binoculars, and a video cassette recorder. Appendix (App.) at 1. This appeal, however, concerns her motion only insofar as it was denied with respect to one rifle and one shotgun. *Id.* at 18–19.

2. Section 522(f) provides:
   Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   ....
   (2) a nonpossessory, nonpurchase-money security interest in any—
   (A) household furnishings, *household goods,* wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor....
   11 U.S.C. § 522(f)(2)(A) (emphasis added).

McGreevy appealed the bankruptcy court's decision to the district court. The district court affirmed on the same ground that firearms are not "household goods" under section 522(f)(2)(A). *McGreevy v. ITT Fin. Servs.*, 130 B.R. 200 (D.Md.1991). Mrs. McGreevy thereafter appealed to this court.

## II.

■ Section 522(f) allows debtors to avoid liens on "household goods" that are "held primarily for the personal, family, or household use of the debtor or a dependent of the debtor."[3] The issue presented in this case—an issue of first impression in this Circuit—is whether Mrs. McGreevy's shotgun and rifle are "household goods" within the meaning of 11 U.S.C. § 522(f)(2)(A).[4]

Essentially two different definitions of "household goods" have achieved prom-

inence in the bankruptcy courts since the adoption of the Bankruptcy Code in 1978. For the reasons explained below, we reject both of these definitions in favor of a definition that we are convinced is more faithful to congressional intent as evidenced in the language of section 522(f)(2)(A).

The first definition used by the bankruptcy courts focuses upon the necessity of the goods to the debtor as he emerges from bankruptcy. Under this definition, only those goods that are found and used in or around the debtor's home *and* that are necessary to a debtor's fresh start after bankruptcy constitute "household goods."[5] The district court and the bankruptcy court below, *see* App. at 53, relied upon this definition when they followed the rationale of *Barnes* in rejecting Mrs. McGreevy's claim. *McGreevy*, 130 B.R. at 203 (quoting *Barnes*, 117 B.R. at 847).[6]

---

3. The goods must be exempt from the debtor's estate under either state or federal law. Maryland has exercised its right under 11 U.S.C. § 522(b) to opt out of the federal exemption scheme set forth in 11 U.S.C. § 522(d), and both parties agree that Mrs. McGreevy's shotgun and rifle are exempt under the Maryland exemption statute. *See* Md. Cts. & Jud.Proc. Code Ann. § 11–504(b), (f); *McGreevy*, 130 B.R. at 203 n. 3; Appellant's Br. at 3–4; Appellee's Br. at 2.

4. Congress authorized lien avoidance for household goods under the new Bankruptcy Code because creditors were coercing debtors by threatening repossession of these goods. These goods were of relatively little resale value to the creditors. The threat of repossession of these goods, however, would often prompt debtors to pay their obligations because the debtors knew they would need these goods after bankruptcy and would not be able to afford to replace them. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 126–27 *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6087–88.

5. This definition has been adopted in both firearm lien avoidance contexts, *see infra* note 7, and non-firearm lien avoidance contexts, *see, e.g., In re Vale*, 110 B.R. 396, 406 (Bankr.N.D. Ind.1989) (power drill and mower are household goods; movie camera, projector, hedge trimmer, and boat motor are not household goods); *In re McTearnen*, 54 B.R. 764, 765 (Bankr.D.Colo.1985) (camping equipment, fishing rods, tools, and bicycle are not household goods); *In re Ruppe*, 3 B.R. 60, 61 (Bankr. D.Colo.1980) (camera and projectors are not household goods).

Some courts require that the items also be of limited resale value in order to be considered "household goods." *See, e.g., In re McCain*, 114 B.R. 652, 654 (Bankr.E.D.Mo.1990) (two firearms are not household goods, but camera is); *In re Oglesby*, 98 B.R. 960, 962 (Bankr.E.D.Mo. 1989) (rifles and pistol are not household goods); *In re Reid*, 97 B.R. 472, 478 (Bankr. N.D.Ind.1988) (camera, aquarium, bicycle, lawnmower, grill, calculator, gym weight set, one radio and tape player, coin collection, and one fishing rod and reel per person are household goods; camping equipment, excess radios, and excess fishing equipment are not household goods); *In re Gray*, 87 B.R. 591, 592–93 (Bankr. W.D.Mo.1988) (guns and swimming pool are not household goods; two televisions, VCR, computer, stereo, CB radio base, tools, lawn equipment, luggage, barbecue grill, hobby equipment, phone, swing set, auto repair equipment, and sporting knives are household goods); *In re Psick*, 61 B.R. 308, 313 (Bankr.D.Minn. 1985) (car, dirt-bike, tractor-loader, and tiller are not household goods); *In re Wetzel*, 46 B.R. 254, 255 (Bankr.W.D.Va.1984) (firearms are not household goods).

The Eighth Circuit, in *In re Thompson*, 750 F.2d 628, 631 (8th Cir.1984) essentially adopted both requirements of necessity and limited resale value. The Tenth Circuit has rejected the *Thompson* requirements as "contrary to [the] plain words" of section 522(f). *In re Liming*, 797 F.2d 895, 901 & n. 6 (10th Cir.1986).

6. In *Barnes*, the Bankruptcy Court for the District of Maryland held that a .22 pistol, a 30–06 rifle, two shotguns, and a .22 rifle were not household goods under section 522(f)(2)(A).

The "necessity" requirement is derived not from the language of the statute itself, but from a passage in the House Report to the Bankruptcy Reform Act of 1978 which emphasizes that the purpose of the Bankruptcy Code is to ensure debtors a fresh start after bankruptcy. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 126, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6087 ("[The bill] adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start."). The courts that have imposed a "necessity" requirement have extrapolated from this statement of general purpose the requirement that household goods must be necessary to a fresh start to be eligible for lien avoidance. The courts that have adopted this definition have uniformly held that firearms are not "household goods" within the meaning of section 522(f)(2)(A).[7]

We reject this definition of "household goods" because it is without foundation in the statute. Section 522(f)(2)(A) does not limit those household goods that are eligible for lien avoidance to only those goods that are necessary to a debtor's fresh start. It allows debtors to avoid liens on *all* exempt household goods that are held primarily for personal, family, or household use. Congress, in effect, decided that all such goods are important to a debtor's fresh start following discharge from bankruptcy, and it effected that decision by the inclusion—without limitation—of "household goods" in the list of personal property eligible for lien avoidance.

The second definition adopted in the bankruptcy courts is more defensible as a matter of statutory construction than the first definition, but it is still, we believe, inadequate. Under the second definition, "household goods" include *all* goods typically found and used in or around the home, whether or not they would be considered strictly necessary to a debtor's fresh start.[8] The two courts that have applied this definition in determining whether firearms are "household goods" have come to different conclusions. *Com-*

---

*Barnes,* 117 B.R. at 847. The court defined "household goods" to include only those items of personal property that are reasonably necessary for day-to-day residential living *and* necessary to a fresh start after bankruptcy. *Id.* at 847–48. It reasoned that firearms "are sporting goods normally used outside and away from the home" and as such are necessary neither to day-to-day living nor to a debtor's fresh start after bankruptcy. *Id.*

7. *See, e.g., Barnes,* 117 B.R. at 847–48; *In re Thornton,* 91 B.R. 913, 916 (Bankr.C.D.Cal. 1988); *In re Greenlee,* 61 B.R. 257, 258 (Bankr. D.Colo.1986); *In re Noggle,* 30 B.R. 303, 305–06 (Bankr.E.D.Mich.1983).

8. *See, e.g., In re Caruthers,* 87 B.R. 723, 728 (Bankr.N.D.Ga.1988) (television and stereo system are household goods); *In re Miller,* 65 B.R. 263, 265–66 (Bankr.W.D.Mo.1986) (television, stereo, lawnmower, and tools are household goods; bicycle and camera are not household goods); *In re Vaughn,* 64 B.R. 213, 215 (Bankr. S.D.Ind.1986) (stereo and computer are household goods); *In re Coleman,* 5 B.R. 76, 79 (Bankr.M.D.Tenn.1980) (stereo system is a household good).

Some courts have expanded this proximity definition to include "personal property that enables the debtor and his dependents to live in a usual convenient and comfortable manner or that has entertainment or recreational value ... *even though it is used away from the residence or its curtilage.*" *In re Bandy,* 62 B.R. 437, 439 (Bankr.E.D.Cal.1986) (emphasis added) (televisions, VCR, computer, answering machine, video game, stereo system, golf clubs, exercise equipment, tools, and lawnmower are household goods). Those courts that have considered whether firearms are "household goods" under this expanded definition not surprisingly have concluded that they are household goods. *See In re Champion,* 94 B.R. 709, 711–12 (Bankr. S.D.Ala.1988) (firearms and camping equipment are household goods); *In re Courtney,* 89 B.R. 15, 16 (Bankr.W.D.Tex.1988) (firearms, bow and arrows, cameras, golf clubs, and bicycle are household goods); *In re Ray,* 83 B.R. 670, 673 (Bankr.E.D.Mo.1988) (guns, lawn equipment, camping equipment, bicycles, and exercise equipment are household goods); *In re Bowen,* 82 B.R. 102, 104–05 (Bankr.E.D.Mo.1988) (guns, VCR, fishing equipment, golf clubs, tent, cameras, tools, luggage, penny collection, and barbecue grill are household goods).

These courts have not attempted to justify this definition under either the language or the structure of the statute, and we are unable to do so. A *sine qua non* of a "household" good must be use in or around the house. Any definition that does not incorporate *at least* this requirement is wholly without mooring in the statute. Congress provided lien avoidance for "household goods," not for all "goods."

*pare In re Barrick,* 95 B.R. 310, 313 (Bankr.M.D.Pa.1989) (gun is not household good because it is "not personal property normally used by the debtor in or about the residence"; stereo and VCR are household goods), *with In re Barley,* 74 B.R. 450, 452 (Bankr.N.D.Ind.1987) (rifle is household good because it "could be used in or about the debtors' residence"; chain saw is also household good).

This second definition is more tenable than the necessity definition because it is grounded at least generally in the statutory text. Ultimately, however, it fails to capture fully the functional nexus between the good and the household that distinguishes a household good from a good that happens (even typically so) to be used in the house. We therefore reject this definition as well.

■ We adopt for this Circuit, instead, a definition of "household goods" that explicitly incorporates a requirement of a functional nexus between the good and the household. Such a requirement, we believe, is necessary for the term to have the ordinary, common-sense meaning that was intended by Congress. *See Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). Any definition that does not include a functional requirement will inevitably suffer from either the underinclusiveness of the necessity defini-

tion,[9] because some goods are used to support and facilitate daily life within the home that are not strictly necessary to day-to-day living, or the overinclusiveness of the proximity definition,[10] because some goods are found and used within the home that are not used to support and facilitate home life.[11] Indeed, the absence of such a requirement in the two generally accepted definitions is, we suspect, the cause of the inability of the courts to agree on either definition.

We conclude that the requisite functional nexus exists where—and only where—the good is used to support and facilitate daily life within the house. It is the household good's use *for these purposes* that distinguishes it from a good that is merely located and used within the house. Pots and pans are household goods *because* they are used to support and facilitate daily household living; a model car collection, by contrast, is not a household good because it serves no such purpose. *Cf.* 20 C.F.R. § 416.1216(a) (for purposes of Social Security Administration regulations, "household goods" defined to include "household furniture, furnishings and equipment which are commonly found in or about a house and are used in connection with the operation, maintenance and occupancy of the home").

We therefore hold that "household goods" under section 522(f)(2)(A) are those items of personal property that are typically found in or around the home and used by the debtor or his dependents to support and facilitate day-to-day living within the home,

9. *See, e.g., Barrick,* 95 B.R. at 312–13; *Caruthers,* 87 B.R. at 728; *Vaughn,* 64 B.R. at 214–15 ("To declare that only goods necessary for the operation of the household can qualify as 'household goods' would be to ignore cases where nonnecessary goods were given such status."); *Coleman,* 5 B.R. at 79.

10. *See, e.g., Vale,* 110 B.R. at 406 ("If the legislature intended such a broad and sweeping application of § 522(f)(2)(A) it could have merely permitted lien avoidance in 'all goods found in and around the Debtor's household,' or like language, but did not."); *Oswald v. ITT Financial Services,* 85 B.R. 541, 543 (W.D.Mo.1986) ("Items are not 'household goods' merely because they are found in many, or most homes."); *Noggle,* 30 B.R. at 305 ("If Congress

had intended to permit a debtor to avoid a lien on all items kept in a household, there would have been no need to separately list [the other categories of property].").

11. It might appear at first blush that the statute's requirement that the household good be "held primarily for the personal, family, or household use of the debtor" independently ensures the existence of a functional nexus between the good and the household. This portion of the statute, however, requires only that the good be "held" for a personal as distinguished from a commercial use, not that it actually be used for such a purpose. This limitation was included to prevent lien avoidance on goods kept at the debtor's home but held either for business investment or for retail sale.

including maintenance and upkeep of the home itself.

 There are doubtless many goods found and used in the house for which a *per se* rule will be possible under the definition that we adopt above. For other goods, whether or not they constitute "household goods" will necessarily depend in whole or in part upon the cultural environment of the debtor or the geographic location of the debtor's household. We are not prepared to conclude at this time that firearms *per se* can never be household goods under our newly-adopted definition,[12] and we need not go so far on the record before us. Even assuming that firearms can be household goods under certain circumstances,[13] it is clear that Mrs. McGreevy's firearms are not household goods.

The McGreevys live in a townhouse that adjoins other townhouses in a complex of twenty-five to thirty townhouses. App. at 24, 27. Mrs. McGreevy testified that her husband uses the rifle primarily to hunt deer in Maryland, West Virginia, and Pennsylvania, *id.* at 21, and occasionally uses both firearms for target practice at her uncle's house or in Mount Airy, *id.* at 25–26. Mrs. McGreevy noted only as an afterthought that the shotgun and rifle are also available for protection of their home and persons. *Id.* at 23. It is evident from this testimony that the McGreevys' firearms are usually, if not exclusively, used away from the McGreevy household and its curtilage and that they are not used by the McGreevys to support or facilitate their day-to-day household living. Accordingly, they do not constitute "household goods" under 11 U.S.C. § 522(f)(2)(A), as we define that term today.

## CONCLUSION

We hold that the firearms at issue in this case are not "household goods" within the meaning of section 522(f)(2)(A). The judgment of the district court is therefore affirmed.

AFFIRMED.

---

**12.** The vast majority of bankruptcy courts that have addressed the issue have held, as the district court did here, that firearms can never constitute household goods. *See, e.g., Barnes,* 117 B.R. at 847–48; *Oglesby,* 98 B.R. at 962; *Barrick,* 95 B.R. at 313; *Gray,* 87 B.R. at 593; *In re Weaver,* 78 B.R. 135, 139 (Bankr.N.D.Tex. 1987); *Oswald,* 85 B.R. at 543; *Wetzel,* 46 B.R. at 255; *Noggle,* 30 B.R. at 306; *In re McPherson,* 18 B.R. 240, 241 (Bankr.D.N.M.1982); *In re Cole,* 15 B.R. 322, 325 (Bankr.W.D.Mo.1981). *Contra Champion,* 94 B.R. at 712; *Courtney,* 89 B.R. at 16; *Ray,* 83 B.R. at 673; *Bowen,* 82 B.R. at 105; *Barley,* 74 B.R. at 452.

**13.** It appears from the fact-specific inquiry conducted by some courts that they would be receptive to claims that particular firearms can be household goods under section 522(f)(2)(A). *See, e.g., McCain,* 114 B.R. at 653–54; *Thornton,* 91 B.R. at 916; *Greenlee,* 61 B.R. at 258. *Contra In re Gonshorowski,* 110 B.R. 51, 53 (Bankr. N.D.Ala.1990).