**In the Matter of Robert T. RAINES, Gwen M. Raines, Debtor.**

**Bankruptcy No. N93–11869–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Dec. 7, 1993.

Theo D. Mann, Mann & Wooldridge, P.C., Newnan, GA, for debtor.

Sarah A. Wyeth, Tomlinson, Dennison & Hasty, P.C., Stone Mountain, GA, for First Family Financial.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion to Avoid Liens, filed by the debtors Robert T. and Gwen M. Raines (hereinafter "Debtors"), and the objection thereto filed by First Family Financial Services, Inc. (hereinafter "First Family"). By their Motion, the Debtors seek to avoid a nonpossessory, non-purchase-money security interest in certain household goods, a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(K). A hearing on this Motion was held on October 29, 1993, after which the Court took this matter under advisement. Based upon the following findings

of fact and conclusions of law, the Court will grant the Motion.

## Findings of Fact

On April 13, 1993, the Debtors and First Family entered into a loan transaction whereby the Debtors incurred an obligation amounting to $2,400.00. In order to secure this debt, First Family demanded and received a security interest in certain items of personal property owned by the Debtors. Specifically, First Family obtained a security interest in two television sets, one VCR, one stereo, two Nintendo games, one camera, one set of golf clubs, and one .357 Magnum Smith & Wesson pistol (hereinafter "handgun"). In an effort to protect their interest in this property, First Family prepared and filed a UCC–1 financing statement.[1]

After this loan transaction, the Debtors filed a petition in this Court seeking protection under chapter 13 of the Bankruptcy Code on September 8, 1993. The Debtors attached to their petition a schedule of property which they claimed as exempt. This list included the VCR, the handgun, and "miscellaneous household goods." *See* Petition, Schedule C. In addition, the Debtors listed First Family as a creditor in the amount of $2,160.00 with security in "miscellaneous household goods" valued at $1,000.00. Subsequently, the Debtor filed the instant Motion pursuant to 11 U.S.C. § 522(f), seeking to avoid the lien which First Family claimed to have on these household goods. When this matter came before the Court for a hearing, the only issue for determination was whether the Debtors' handgun qualified as a household good subject to the exemption provisions of § 522(f). The Court concludes that it does, based upon the reasoning set forth below.

## Conclusions of Law

A debtor may avoid liens on certain property under the authority of 11 U.S.C. § 522(f), which states, in part, as follows:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.    .    .    .    .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, *household goods*, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependant of the debtor ...

11 U.S.C. § 522(f)(2)(A) (emphasis added).

In order to decide whether the Debtors' handgun comes within the scope of this lien avoidance provision, the Court first must determine the meaning of the term "household goods." There are many reported decisions attempting to arrive at such a definition, and courts have taken various approaches. One common approach defines the term as "only those goods that are found and used in or around the debtor's home *and* that are necessary to a debtor's fresh start after bankruptcy." *In re McGreevy*, 955 F.2d 957, 959 (4th Cir.1992) (emphasis in original) (discussing, but not adopting, various definitions used by courts); *see also In re Thompson*, 750 F.2d 628, 631 (8th Cir.1984); *In re McCain*, 114 B.R. 652, 653 (Bankr.E.D.Mo. 1990); *In re Oglesby*, 98 B.R. 960, 962 (Bankr.E.D.Mo.1989); *In re Wright*, 34 B.R. 643, 645 (Bankr.W.D.Ky.1983). This definition actually incorporates a two step analysis of the issue of "household goods" within the scope of § 522(f)(2)(A). Specifically, the first step requires the court to decide whether the item in question is a good "found and used in or around the debtor's home." If so, the item qualifies as a household good. At the second step, the court must inquire into the purpose of the household good and decide whether it is "necessary" to the debtor's fresh start in bankruptcy.

The Court rejects this definition as too restrictive. The problem lies in the fact that this approach to the concept of "household

---

1. At the hearing of October 29, 1993, First Family merely alleged that they had properly recorded a UCC–1 financing statement. For the purpose of this Order, however, the Court will assume that a proper recordation took place.

goods" adds a requirement that is not found in the language of § 522(f)(2)(A). There is nothing in this provision that limits its application only to goods that are necessary for the debtor's fresh start. The statute refers to "household goods" in general and does not expressly restrict its application as the above cited cases have chosen to do. As such, this Court does not accept this approach in defining the scope of the term "household goods" since it is contrary to the plain language of the statute. *Accord McGreevy*, 955 F.2d at 960; *Central Nat'l Bank & Trust Co. v. Liming (In re Liming)*, 797 F.2d 895, 901 & n. 6 (10th Cir.1986).

A second common definition of the term "household goods" adopted by many courts is less restrictive and includes "any personal property normally used by debtors or their dependents in or about their residence." *Caruthers v. Fleet Finance, Inc. (In re Caruthers)*, 87 B.R. 723, 728 (Bankr.N.D.Ga.1988) (Cotton, B.J.); *see also Barnes v. ITT Fin. Servs. (In re Barnes)*, 117 B.R. 842, 847 (Bankr.D.Md.1990); *In re Courtney*, 89 B.R. 15, 16 (Bankr.W.D.Tex.1988); *In re Ray*, 83 B.R. 670, 673 (Bankr.E.D.Mo.1988). This definition appears to be similar to the first, at least to the extent of how it defines the concept of a household good. It is a less restrictive approach, however, in that its application is not limited only to those items which are necessary for the debtor's fresh start. The Court finds this approach to be more compatible with the language of § 522(f)(2)(A).

■ Before adopting this definition for the case at hand, however, the Court takes note of the aforementioned Fourth Circuit Court of Appeals decision in *In re McGreevy*, which discussed at length the issue of defining the term "household goods." In that decision, the Fourth Circuit rejected both approaches discussed above. In particular, it declined to follow the restrictive two step analysis for the same reasons this Court does. The *McGreevy* court then found the second definition to be insufficient, in that

> it fails to capture fully the *functional nexus* between the good and the household that distinguishes a household good from a

good that happens (even typically so) to be used in the house.

955 F.2d at 961 (emphasis added). The Fourth Circuit went on to elaborate its own definition as follows:

> We therefore hold that "household goods" under section 522(f)(2)(A) are those items of personal property that are typically found in or around the home and used by the debtor or his dependents to support and facilitate day-to-day living within the home, including maintenance and upkeep of the home itself.

955 F.2d at 962.

■ The Court finds the *McGreevy* definition to be substantially similar to the second commonly used definition discussed above, even though the Fourth Circuit rejected it. The only difference between these two definitions is that the *McGreevy* approach expressly recognizes the need for a "functional nexus" between the good and the household, while the second approach does not. After reviewing the cases that have applied this second approach, however, the Court believes that this definition, at least, impliedly requires that such a "functional nexus" exist. Therefore, the *McGreevy* definition does not appear to be a material departure from the other definition. Nevertheless, the Fourth Circuit's approach is the better one since it expressly establishes the importance of there being a relationship between the good and the household. For this reason, the Court now adopts the *McGreevy* definition of "household goods."

In turning to the facts of the case at bar, the Court notes that whether an item is a household good must be determined on a case by case basis. *Caruthers*, 87 B.R. at 728; *Smith v. Northwest Fin. of Georgia (In re Smith)*, 57 B.R. 330, 331 (Bankr.N.D.Ga. 1986) (Kahn, C.J.). It is useful, however, to see how other courts have addressed the issue of whether a firearm qualifies as a household good within the scope of § 522(f)(2)(A). There have been many reported decisions, but they have reached differing conclusions. *See, e.g., Barnes*, 117 B.R. at 847 (firearms are sporting goods used outside the home and are not household goods); *McCain*, 114 B.R. at 653 (firearms

are household goods but not subject to lien avoidance provision); *Oglesby,* 98 B.R. at 962 (rifles and pistol not household goods); *Barrick v. Avco Consumer Discount Co. (In re Barrick),* 95 B.R. 310, 313 (Bankr.M.D.Pa. 1989) (gun not personal property normally used around debtor's residence); *In re Champion,* 94 B.R. 709, 711–12 (Bankr. S.D.Ala.1988) (guns and camping equipment fall within the meaning of household goods); *Courtney,* 89 B.R. at 16 (debtor allowed to avoid lien on guns); *Oswald v. ITT Fin. Servs.,* 85 B.R. 541, 543 (W.D.Mo.1986) (firearms not household goods merely because they are found in many homes); *Ray,* 83 B.R. at 673 (Bankr.E.D.Mo.1988) (shotguns, pistols, and revolver are household goods); *Heights Finance Corp. v. Barley (In re Barley),* 74 B.R. 450, 452 (Bankr.N.D.Ind.1987) (rifle is household good); *McPherson v. Associates Fin. Servs. (In re McPherson),* 18 B.R. 240, 241 (Bankr.D.N.M.1982) (gun cabinet, but not guns, falls within meaning of household goods).

Out of this confused mass of cases, the Court finds two to be particularly helpful; the first being the Fourth Circuit's opinion in *McGreevy.* In that case, the court was faced with the issue of whether a shotgun and a rifle could be classified as household goods. After noting the debtors used these firearms almost exclusively away from their house, and not "to support or facilitate their day-to-day household living," the *McGreevy* court concluded that these items were not household goods. 955 F.2d at 962. Nevertheless, the Fourth Circuit declined to rule that firearms *per se* could never be household goods. In fact, the court suggested that under some circumstances, guns, indeed, could come within the scope of § 522(f)(2)(A). *Id.* at 962 & n. 13.

■ The Court agrees with *McGreevy* in that it believes it would not be proper to adopt a *per se* rule as to firearms and household goods. Still, the Court finds the facts of this case to be distinguishable from *McGreevy* to the extent that the item in question *sub judice* is not a shotgun or rifle, but rather is a handgun. This fact leads the Court to note the second particularly helpful case of *In re Gonshorowski,* 110 B.R. 51 (Bankr.N.D.Ala.1990). In that case, the bankruptcy court found a .22 revolver to be a household good and subject to the lien avoidance provision of § 522(f)(2)(A). In reaching such a decision, the court noted that "[r]evolvers of this type are typically used for defense by debtors and their dependents, particularly around the home." *Id.* at 53. This Court agrees with *Gonshorowski* as to the purpose of such a firearm.

■ In turning to the case at hand, the Court notes the factual similarity with *Gonshorowski.* The Debtors' here own and possess a .357 Smith & Wesson Magnum handgun. Like the revolver described in *Gonshorowski,* this type of firearm typically is used for defense purposes and protection in and around the home. *See* Tr. at 2 (Oct. 29, 1993). This Court is of the opinion that such an item satisfies the *McGreevy* definition of "household goods" in that items commonly used to protect the home and its occupants support and facilitate daily household living. In other words, there exists a sufficiently strong "functional nexus" between the handgun as a good and the Debtors' household. Therefore, the Court finds that the Debtors' handgun is a "household good" within the meaning of 11 U.S.C. § 522(f)(2)(A), allowing the Debtors to avoid First Family's lien on this item of property.

### Conclusion

In conclusion, the Court adopts the Fourth Circuit's *McGreevy* definition of "household goods" which expressly requires a functional relationship between the goods in question and a debtor's household. Furthermore, the Court finds that the Debtors' handgun satisfies this definition and is subject to the lien avoidance provisions of 11 U.S.C. § 522(f)(2)(A). Accordingly, the Debtors' Motion to Avoid Liens is hereby **GRANTED** to avoid the lien on the handgun, and First Family's Objection is **OVERRULED.** This Order will modify the Consent Order entered contemporaneously herewith.

**IT IS SO ORDERED.**