**In the Matter of Thomas B. KARAUS, Debtor.**

**No. BK01–83464.**

United States Bankruptcy Court, D. Nebraska.

April 18, 2002.

Marion Pruss, Omaha, NE, for Debtor.

Thomas Stalnaker, Omaha, NE, trustee.

*MEMORANDUM*

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on March 14, 2002, on Trustee's Objection to Claim of Exemptions. Appearances: Marion Pruss for the Debtor and Thomas Stalnaker as Trustee. This memorandum contains findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

*Background*

This Chapter 7 debtor has claimed an exemption for firearms that he owns. His exemption is claimed under Neb.Rev.Stat. §§ 25–1552 and 25–1556(1) and (3). The Chapter 7 Trustee has objected, asserting that the only exemption available is under

Section 25–1552 which permits a person to claim as exempt the sum of $2,500.00 in personal property. The Trustee further suggests that the Debtor has already claimed a portion of the exemption under Section 25–1552, and, therefore, is limited to the remaining balance under that statutory section.

The Debtor asserts, however, that at least two of the firearms are kept and used for protection of his person and his household premises and other household goods. Therefore, for at least two of the weapons, which he has specifically identified in his affidavit testimony, he asserts the benefit of Section 25–1556(3) which permits a debtor to claim as exempt an aggregate fair market value of $1,500.00 in a number of specific items as well as a general item entitled "household goods". Finally, the Debtor argues that the balance of the value of the firearms collection is properly claimed exempt under Section 25–1556(1) which permits an exemption for "the immediate personal possessions of the debtor and his or her family."

### Facts

The Debtor is in a Chapter 7 case because he incurred more than $70,000.00 in medical expenses for treatment of a heart condition. He had no health insurance and was unable to deal with the expenses because, among other things, he can no longer work in his security guard occupation.

Approximately thirty years ago, he obtained a permit to own and carry a gun due to personal threats and attacks by a local gang. He then began to educate himself about guns by reading books and magazines. Eventually, he joined a gun club and became involved in recreational target shooting. He continued his interest in firearms over the years and currently is a member of a gun club in Plattsmouth, Nebraska.

Most of the guns he now owns were purchased by him over a twenty-five year period and he characterizes them as part of his "gun collection". The collective appraised value of the firearms is $4,190.00. Of that amount, he has claimed, and the Trustee has not objected to, $2,250.00 as exempt under Neb.Rev.Stat. § 25–1552. Therefore, the financial dispute between the parties is the right of the Debtor to exempt approximately $1,940.00 in value with regard to the balance of the gun collection.

Included in the gun collection is a Mossberg 12–gauge shotgun valued at $125.00, and a Norinco .45 automatic pistol valued at $195.00. The evidence before the court is that the Debtor considers those two weapons to be a part of his household goods in that he keeps them in his household at all times for the purpose of self-defense if that should become necessary. These are the two weapons he claims as exempt under Neb.Rev.Stat. § 25–1556(3).

The Debtor's affidavit evidence concerning the rest of the collection is taken from paragraph 10 of his affidavit, Filing No. 12. He states, and I take as a finding of fact, the following:

I consider my other guns to be personal possessions in that: I did not acquire them for resale and have no present plans to sell any of them; in most cases, the price I could obtain by selling any of my guns would be less than the cost of acquisition; the gun sport is an integral part of my recreational and social life; because each gun was acquired because of some historical or aesthetic characteristic rather than its monetary value; and because denial of my claimed exemption would cause an emotional hardship to me while creating a negligible benefit to my creditors.

### Law and Discussion

The statutory provisions which are the subject of this contested matter are contained in Neb.Rev.Stat. § 25–1556, which reads in relevant part:

No property hereinafter mentioned shall be liable to attachment, execution, or sale on any final process issued from any court in this state, against any person being a resident of this state: (1) The immediate personal possessions of the debtor and his or her family; (2) all necessary wearing apparel of the debtor and his or her family; (3) the debtor's interest, not to exceed an aggregate fair market value of one thousand five hundred dollars, in household furnishings, household goods, household computers, household appliances, books, or musical instruments which are held primarily for personal, family, or household use of such debtor or the dependents of such debtor; (4) the debtor's interest, not to exceed an aggregate fair market value of two thousand four hundred dollars, in implements, tools, or professional books or supplies held for use in the principal trade or business of such debtor or his or her family, which may include one motor vehicle used by the debtor in connection with his or her principal trade or business or to commute to and from his or her principal place of trade or business; and (5) the debtor's interest in any professionally prescribed health aids for such debtor or the dependents of such debtor....

Neb.Rev.Stat. § 25–1556 (Michie Supp. 2001).

Dealing first with subsection 3 of the statutory language, such subsection came to be part of the statute by legislative amendment in 1997. Prior to such amendment, the term "household goods" was not in the statute, although other references to specific household items were in the stat-ute. For example, the relevant statutory language which was changed by the 1997 amendment was: "(2) all necessary wearing apparel of the debtor and his family; all kitchen utensils and household furniture, to be selected by the debtor, not exceeding in value fifteen hundred dollars...."

That language (with a lower exemption amount) actually came into the statutes by virtue of legislative enactments in 1969. Neb.Rev.Stat. § 25–1556 (Supp.1969).

Prior to the amendments in 1969, the statutory language was very specific with regard to items which could be claimed as exempt. That statute, in effect from the first days of statehood until its amendment in 1969, stated:

No property hereinafter mentioned shall be liable to attachment, execution or sale on any final process issued from any court in this state, against any person being a resident of this state and the head of a family: (1) The family Bible; (2) family pictures, school books and library for the use of the family; (3) a seat or pew in any house or place of public worship; (4) a lot in any burial ground; (5) all necessary wearing apparel of the debtor and his family; all beds, bedsteads and bedding necessary for use of said family; all stoves and appendages put up or kept for the use of the debtor and his family, not to exceed four; all cooking utensils, and all other household furniture not here enumerated, to be selected by the debtor, not exceeding in value one hundred dollars; (6) one cow, three hogs, and all pigs under six months old, and if the debtor be at the time actually engaged in the business of agriculture, in addition to the above, one yoke of oxen, or a pair of horses, in lieu thereof; ten sheep, and the wool therefrom, either in the raw material or manufactured into yarn or

cloth; the necessary food for the stock mentioned in this section, for the period of three months; one wagon, cart or dray, two plows and one drag; necessary gearing for the team herein exempted; and other farming implements not exceeding fifty dollars in value; (7) the provisions for the debtor and his family necessary for six months' support, either provided or growing, or both, and fuel necessary for six months; (8) the tools and instruments of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business; the library and implements of any professional man. . . .

Neb.Rev.Stat. § 25–1556 (Reissue 1964).

In other words, there has been a slow but steady evolution in the statutory language with regard to what items now identified as "household goods" may be claimed as exempt. In the "old days", the Legislature limited exempt items to very specific and statutorily enumerated personal property. It subsequently eliminated the specific items and allowed exemption of "all kitchen utensils and household furniture" up to a certain value. Finally, the Legislature has modernized the language and made it consistent with and parallel to, but not identical with, the federal exemptions listed in 11 U.S.C. § 522(d)(3).

The most recent legislative version of Section 25–1556, that of the laws enacted in 1997, specifies as exempt those "household goods which are held primarily for personal, family, or household use of such debtor or the dependents of such debtor."

█ The initial issue is whether a 12–gauge shotgun and a .45–caliber pistol used by the Debtor for self-defense and protection of his home are items which may be defined as "household goods", and, therefore, exempted under Section 25–1556(3).

The Nebraska Legislature has not provided the courts with an itemized list of property which would fall under the general phrase "household goods". As mentioned above, the Legislature has moved away from the practice of specifically identifying, or limiting, those items which might be exempt and has left the matter to the judgment of the courts. Such a practice by the Legislature is not unusual and has been generally followed by the legislatures of other states, as indicated by the case law which has developed under Section 522 of the Bankruptcy Code as bankruptcy courts and federal appellate courts attempt to determine whether an item is a "household good" for purposes of lien avoidance under the bankruptcy statute.

A bankruptcy court in the Western District of Washington, following and building upon decisions from the Eastern District of California and the Middle District of Tennessee, adopted the following definition of "household goods":

[H]ousehold goods and furnishings includes any personal property which is normally used by and found in the residence of a debtor and his dependents or at or upon the curtilage of said residence. This definition also includes personal property that enables the debtor and his dependents to live in a usual convenient and comfortable manner or that has entertainment or recreational value even though it is used away from the residence or its curtilage.

*In re Griffiths,* 86 B.R. 639, 642 (Bankr. W.D.Wash.1988) (quoting *In re Bandy,* 62 B.R. 437, 439 (Bankr.E.D.Cal.1986) (following *In re Coleman,* 5 B.R. 76 (Bankr. M.D.Tenn.1980))).

Similarly, the bankruptcy court in the Eastern District of Missouri generally found the term "household goods" to include personal property found in a debtor's residence and necessary to the functioning

of a household or normally used by and found in the residence of a debtor. *In re Ray*, 83 B.R. 670, 673 (Bankr.E.D.Mo. 1988). The *Ray* court went on to explain that the term includes more than those items which are "indispensable to the bare existence of a debtor and his family. Items which, while not being luxuries, are convenient or useful to a reasonable existence must also be included." *Id.*

The Fourth Circuit Court of Appeals, in the case of *McGreevy v. ITT Financial Services (In re McGreevy)*, 955 F.2d 957 (4th Cir.1992), defined the term "household goods" for purposes of lien avoidance under 11 U.S.C. § 522(f)(2)(A) as "those items of personal property that are typically found in or around the home and used by the debtor or his dependents to support and facilitate day-to-day living within the home, including maintenance and upkeep of the home itself." 955 F.2d at 961–62.

Using the *McGreevy* definition and citing in detail a variety of cases that permitted or disallowed guns to be treated as exempt, or liens on such guns to be avoidable, under the Bankruptcy Code definition of "household goods" used by the various courts, Bankruptcy Judge Homer Drake, in *In re Raines*, 161 B.R. 548 (Bankr.N.D.Ga.1993), made a factual finding that a .357 Smith & Wesson Magnum handgun is the type of weapon that is typically used for defense by debtors and their dependents, particularly around the home, citing *In re Gonshorowski*, 110 B.R. 51 (Bankr.N.D.Ala.1990). He therefore found that the firearm in question was exempt and the lien encumbering the firearm was avoided. The bankruptcy court decision in *Raines* was affirmed by the district court in *First Family Financial Services, Inc. v. Raines (In re Raines)*, 170 B.R. 187 (N.D.Ga.1994). The district court affirmed the bankruptcy court's adoption of the *McGreevy* definition of "household goods" as "those items of personal property that are typically found in or around the home and used by the debtor or his dependents to support and facilitate day-to-day living within the home, including maintenance and upkeep of the home itself." 170 B.R. at 188. The district court further stated:

> Applying the definition adopted above, guns are household goods when there is a relationship between the gun and living in the household. Thus, this Court disagrees with those courts holding that firearms can never constitute household goods. *See, e.g., In re McGreevy*, 955 F.2d at 962 n. 12; *cf. In re Gonshorowski*, 110 B.R. 51 (Bankr.N.D.Ala.1990) (pistol held to be household good subject to lien avoidance provision). The bankruptcy court found on the facts of this case that Debtors' handgun protects the home and facilitates daily household living. On the record presented, the Court concludes that such a finding is not clearly erroneous.

*Raines*, 170 B.R. at 188.

Based on the record presented in this case through the affidavit testimony of the Debtor, it is found as a fact the Debtor's 12–gauge shotgun and .45–caliber pistol are used to protect the home and to facilitate daily household living. Therefore, those two firearms are deemed to be "household goods" and are exempt under the Nebraska statutory exemption provision of Section 25–1556(3) to the extent the Debtor has not already claimed the maximum of $1,500.00 in value for the various types of items listed as available for exemption under that section.

■ With regard to the remaining firearms which are claimed as exempt, such items may be exempt only if they can fit within the term "immediate personal possessions of the debtor" contained in subparagraph 1 of Section 25–1556. Histori-

cally, as shown above, the Nebraska Legislature adopted specific language referring to specific items as exempt under Section 25–1556 from the beginning of statehood to 1969. *See* reference to Section 25–1556 (Reissue 1964), above.

In 1969, for the first time in the history of Nebraska, the phrase "the immediate personal possessions of the debtor and his family" became part of the statutory language. In comparing the 1969 language to the prior language of Section 25–1556, it appears that the terminology "the immediate personal possessions of the debtor and his family" replaced several portions of the preceding statute including: "(1) The family Bible; (2) family pictures, school books and library for the use of the family; (3) a seat or pew in any house or place of public worship; (4) a lot in any burial ground." A search of the legislative history of this statutory provision provides no enlightenment with regard to the intent of the Legislature concerning what should be included as an "immediate personal possession". The Legislature has provided no definition of the term and there are no Nebraska appellate court decisions identifying items that may, or may not, be included as exempt property of the debtor under Section 25–1556(1).

The Nebraska bankruptcy courts have had the opportunity to construe the meaning of the phrase "immediate personal possessions" prior to this case. Beginning with *In re Dahlberg*, Neb. Bkr. 79:75, Judge Crawford decided that the phrase meant something more intimate than a vehicle, and, therefore, did not permit a motor vehicle to be claimed as exempt under the statutory provision. Judge Minahan ruled the same in *In re Scrams*, 172 B.R. 297 (Bankr.D.Neb.1994). In *In re Burkman*, Neb. Bkr. 94:687, the undersigned interpreted the phrase "immediate personal possessions" to include "those items which are traditionally sentimental and symbolic of the family, e.g. photo album, family bible, etc." *Id.* at 691. In that case, the debtor had claimed as exempt a diamond ring that once belonged to his deceased wife. The exemption was allowed. Similarly, in *In re Jud*, Neb. Bkr. 99:107, the debtor claimed an exemption for a diamond ring given to the debtor by a friend. The ring was found to have great symbolic significance and, therefore, was exempt under the phrase "immediate personal possessions".

There have been no bankruptcy court decisions in the District of Nebraska concerning whether one or more firearms owned by the Debtor could be claimed as exempt under the "immediate personal possessions" language of Section 25–1556(1).

As discussed in the seminal law review article on Nebraska exemptions, case law discussing the statutory exemptions in the original statutory language suggests that most of the specific categories of exempt property were designed to enable the debtor to hold, free from the claims of his creditors, property necessary to protect him and his family from impoverishment. *Grassman v. Jensen*, 183 Neb. 147, 152, 158 N.W.2d 673, 676 (1968); *Winter v. Winter*, 95 Neb. 335, 340–41, 145 N.W. 709, 712 (1914); *Frazier v. Syas*, 10 Neb. 115, 118, 4 N.W. 934, 935 (1880). In addition, at least some of the specifically exempted property was intended to enable the debtor to rehabilitate himself financially. *Clay Center State Bank v. McKelvie*, 19 F.2d 308, 310 (8th Cir.1927); *In re Conley*, 162 F. 806, 808 (D.Neb.1907). *See* Richard F. Duncan, *Through the Trap Door Darkly: Nebraska Exemption Policy and The Bankruptcy Reform Act of 1978*, 60 Neb. L.Rev. 219, 266 (1981).

Noteworthy in the various discussions by the courts is an absence of commentary with regard to the need for the debtor to hold, free and clear of the claims of his

creditors, a firearm. Firearms were not included in the specific enumeration of items deemed to be exempt under the first Nebraska statutory exemption enactment. Neither have firearms ever been specifically included in any version of the exemption statutes enacted in Nebraska.

The academic literature discussing exemptions in detail includes the afore-mentioned article by Professor Duncan, and Oliver B. Pollak & David G. Hicks, *"Please, Sir, I Want Some More,"—Loopholes, Austerity and the Cost of Living—Nebraska Exemption Policy Revisited*, 73 Neb. L.Rev. 298 (1994). While reviewing the history of the exemption statutes in Nebraska in great detail, and relating the Nebraska exemptions to those provided for in the federal bankruptcy code, neither of these articles mentions whether the Legislature may have considered, but ultimately rejected, the idea that firearms explicitly should be exempted under Nebraska law.

Finding no historical legislative support, no case law support and no academic support for the concept that firearms should be deemed "immediate personal possessions" as that phrase is used and has been used in Section 25–1556 since 1969, the Trustee's objection to such claim of exemption is sustained.

In conclusion, a portion of the value of the firearm collection of the Debtor has been claimed as exempt and is allowed as exempt under Neb.Rev.Stat. § 25–1552. Two specific weapons identified in the body of this opinion are deemed "household goods" and their exemption is allowed under Neb.Rev.Stat. 25–1556(3). The balance of the claim of exemption under § 25–1556(1) for any value remaining and related to specific weapons is denied.