**In re Jerry L. HEATH, Patsy L. Heath, Debtors.**

No. 04–51360(2).

United States Bankruptcy Court, W.D. Kentucky.

Dec. 10, 2004.

Marcus H. Herbert, Paducah, KY, for Debtors.

### MEMORANDUM–OPINION

THOMAS H. FULTON, Bankruptcy Judge.

THIS CORE PROCEEDING[1] is before the Court on "Debtors' Motion for Order Avoiding Lien on Exempt Property" and "Creditor Objection to Debtors' Motion to Avoid Liens on Exempt Property." Debtors seek to use 11 U.S.C. § 522(f)(1)(B) to avoid a non-possessory, non-purchase money lien on household goods of Creditor Citifinancial on two 12 gauge shotguns, one 410 shotgun, one 22 caliber automatic rifle,

one 30/30 rifle, and a tanning bed. Based on the briefs submitted, the arguments of counsel, the testimony of Debtor, Patsy L. Heath, and the entire record in this case, this Court finds that the lien on the Debtors' 30/30 shotgun may be avoided because it is a household good, but that the liens on the remaining firearms and the tanning bed may not be avoided because those items do not fall within the definition of a household good as contemplated under 11 U.S.C. § 522(f)(1)(B).

The Debtors, Jerry L. Heath and Patsy L. Heath, are residents of Mayfield, Kentucky. Mr. Heath is disabled and receives $967 a month in Social Security Disability. Mrs. Heath is employed by Walmart and earns $1011.83 per month net income. They spend approximately $300 a month on food.

The Debtors own five firearms, two 12 gauge shotguns, one 410 shotgun, one 22 caliber automatic rifle, and a 30/30 rifle, which, according to the testimony of Mrs. Heath, are used by their adult son to hunt to provide food for the Debtors to supplement their meat supply. She further testified that her husband owns a 1988 tanning bed, which he uses for treatment of his arthritis on advice of his doctor. Both the firearms and the tanning bed are subject to a lien of Citifinancial.

In the case at bar, the Debtors are seeking to exempt all five of their firearms as well as the tanning bed under 11 U.S.C. 522(f)(1)(B) as his grounds for exemption. Under 11 U.S.C. § 522(f)(1)(B) a "debtor may avoid the fixing of a lien...if such a lien is a nonpossessory, nonpurchase-money security interest in any household furnishings, household goods...that are held primarily for the personal, family, or

---

1.  *See* 28 U.S.C. § 157(b)(2)(K) and (O).

household use of the debtor of a dependent of the debtor."

There is no dispute in the present case that the liens in question are non-possessory and non-purchase money security interests. The inquiry thus focuses on whether the items are "household goods" within the meaning of the bankruptcy code.

Courts across the country have struggled to define "household good," in particular whether firearms can ever fit within that definition. *In re McGreevy*, 955 F.2d 957, 959–960 (4th Cir.1992). As a result, there are at least three competing tests defining household goods. The first is the "necessity test," which focuses the inquiry on whether the item in question serves a vital function to the debtor's reorganization. *Id.*; *In re Cottingham*, 1996 WL 288393 *2. This test is considered the strictest of the various tests and has been used by several bankruptcy courts within the Sixth Circuit, although not in a discussion of firearms. *See In re Keeton*, 161 B.R. 410, 411 (Bankr.S.D.Ohio 1993); *In re Szydlowski*, 186 B.R. 907 (Bankr. N.D.Ohio). The second test is the "broad test" and includes any and all goods typically found and used in the home, regardless of if it is "necessary" for a fresh start. *In re McGreevy*, 955 F.2d at 960–961; *In re Cottingham*, 1996 WL 288393 at *2. As indicated by its name, this test is the most lenient and allows the most goods to be included within the definition of "household goods."

The Fourth Circuit performed a thorough discussion of the two aforementioned tests and found fault with both and instead developed its own standard, the functional-nexus test. *In re McGreevy*, 955 F.2d at 961. This test requires that there be some " 'functional nexus' between the good and the household." *Id.* Such a nexus exists when the good fosters or helps enable daily existence in the household. *Id.* The

Fourth Circuit found that this "functional nexus" approach to be superior to the two prior methods of defining "household goods." The court found fault with the "necessity test" because there was no foundation in the statute to limit the exemption to only those goods "necessary" to support a fresh start. *Id.* at 960. It similarly rejected the "broad test" on the grounds that it fails to establish any requirement that the good be needed or provide an actual benefit or service to the household, and instead only required that the good, whatever it may be, be used in the household. *Id.* at 960–961. The court's compromise, the "functional nexus test," was largely a balance between the necessity test and the broad test in that it required that there be some legitimate purpose for the good in the household but did not require that it necessarily be essential to the home. In the years since the *McGreevy* decision, only one bankruptcy court within the Sixth Circuit has addressed this issue in a published opinion. *In re Cottingham*, 1996 WL 288393. After a thorough discussion, the court in *Cottingham* adopted the functional nexus standard developed by the Fourth Circuit.

■ This Court finds the discussion in *Cottingham*, and its reliance on the McGreevy case, persuasive and believes that the "functional nexus" test best defines the meaning intended by "household goods" in the Bankruptcy Code. With this foundation, we now turn to an application of the facts of our case. The Debtors in the present case seek to exempt several firearms and a tanning bed. Because of the radically different nature of these goods, the firearms will be discussed separately from the tanning bed.

■ The Fourth Circuit, in formulating its test, noted that while many previous courts have found that firearms cannot be household goods it would refrain from

doing so. *In re McGreevy*, 955 F.2d 957, 962. Instead the court stated that finding whether a gun, or any other disputed item, was a household good depended, at least in part, on the culture and/or geographic location of the household in question. As such, a case-by-case analysis is required considering a totality of the particular facts and circumstances. Such an analysis was done in *In re Cottingham* which found that the gun in that case was not a household good because the debtor presented no evidence that the gun supported or facilitated daily life within the household. 1996 WL 288393 *3. Other courts, notably *In re Rhines*, 227 B.R. 308 (Bankr.D.Mont.1998), came to the opposite conclusion when evaluating if a gun qualified as a "household good." In *Rhines* the Debtor was successful in exempting a 7mm gun and a 12 gauge shotgun because they were his "primary means of obtaining meat for food." *Id.* at 310. The court went on to find that the "rifle and shotgun enable the Debtors to feed themselves, and thus live in a usual and comfortable manner...it is hard to imagine a more functional nexus." *Id.* The court went on to discuss the importance of considering the "cultural environment" and "geographic location" of the Debtors' household and was seemingly persuaded by the fact that the Debtors lived in Montana where using guns for hunting is part of the culture of the particular location. *Id.*

While both the *Cottingham* case and the *Rhines* case provide excellent discussions of the applicable standard, the Court finds that *Rhines* provides the better factual comparison and, therefore, guidance. As in *Rhines* the cultural and, more specifically, the geographic environment of the Debtors is of particular importance in this case. According to the testimony of the Debtor, Patsy L. Heath, the guns are used for hunting to supply meat

for their family. The Debtors live in Mayfield, Kentucky, a fairly rural area where hunting is common and culturally appropriate. As was found in *Rhines*, it is hard to think up a more "legitimate purpose" for a household good then providing food for a household. A gun in this instance surely possesses a functional nexus to the household. As such the Debtors can exempt a gun as a "household good." This Court, however, is wary about allowing the Debtors to exempt all five guns they have listed on their schedules. The Debtor stated in her testimony that they do not personally do the hunting, but that the hunting is done by their grown son who then provides the meat to the Debtors' household. Further, they state that the primary hunting done is deer hunting. Because only a single person does the hunting, and that person is not a Debtor, but their son, this Court will permit only one gun to be considered a "household good." During her testimony Debtor stated that her son primarily hunted deer, so this court will allow the 30/30 rifle to be exempt because it is the most appropriate for that type of hunting.

The next issue is whether a tanning bed may be deemed a "household good" for purpose of the exemption under § 522(f)(1)(B). Once again we look to the "functional nexus" test, but in this instance the Court must find that the tanning bed is not a household good.

The Debtor testified that the tanning bed was used by her husband as a treatment for his arthritis. The Debtors have been unable to provide either a prescription from the doctor or an affidavit stating that the doctor recommended this treatment. Without any supporting documentation or any evidence of the validity of this treatment, the Court cannot find that the tanning bed has a legitimate purpose

to fulfill the definition of a "household good" as laid out in § 522(f)(1)(B).

The Court therefore finds GRANTS the Debtors' motion in regards to the 30/30 rifle, and DENIES the Debtors' motion in regards to the two 12 gauge shotguns, 410 shotgun, 22 automatic rifle, and the tanning bed.

A separate Order consistent with the foregoing has been entered in accordance with the Federal Rule of Bankruptcy Procedure 9021.

## ORDER

THIS CORE PROCEEDING is before the Court on Debtors' Motion for Order Avoiding Lien on Exempt Property and Creditor Objection to Debtors' Motion to Avoid Liens on Exempt Property. Debtors seek to use 11 U.S.C. § 522(f)(1)(B) to avoid a non-possessory, non-purchase money lien of household goods of Creditor Citifinancial on two 12 gauge shotguns, one 410 shotgun, one 22 caliber automatic rifle, one 30/30 rifle and a tanning bed. For the reasons set forth in the Memorandum Opinion entered this same date

IT IS HEREBY ORDERED that the Debtor's Motion be **GRANTED** with respect to the 30/30 rifle and otherwise **DENIED**.