In re Randall Mark FRENCH, Angela Lynn French, a/k/a Angela Lynn Frankton, Debtors.

In re Billie J. SHULTZ, Debtor.

Bankruptcy Nos. 94–32039, 94–31620.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 31, 1995.

---

Richard M. Mayer and Wm. Stanton Massa III, Knoxville, TN, for debtors Randall Mark French and Angela Lynn French.

Jim W. Stambaugh and Dana Hale Wood, Morristown, TN, for Equity One, Inc.

Horace M. Brown, Maryville, TN, for debtor Billie J. Shultz.

James W. Greenlee, Sevierville, TN, for Pioneer Credit.

## MEMORANDUM ON MOTIONS TO AVOID LIENS

RICHARD S. STAIR, Jr., Chief Judge.

The court, for the purpose of resolving common issues, has consolidated two motions, one filed in the case of the joint debtors Randall Mark French and Angela Lynn French, and the other filed in the individual case of Billie J. Shultz. In the *French* case, the debtors, after filing the petition commencing their Chapter 7 case on August 16, 1994, filed a Motion to Avoid Lien on September 27, 1994, seeking to avoid a lien held by Equity One, Inc. in a stereo system, sixteen-gauge Harrison–Richardson shotgun, VCR, and camera with accessories. Equity One filed an Objection to Motion to Avoid Lien on October 3, 1994, objecting to the avoidance of its lien in the sixteen-gauge Harrison–Richardson shotgun, VCR, and camera with accessories. The scheduling Order entered in the *French* case on October 28, 1994, provides that the sole issue to be resolved is whether, pursuant to 11 U.S.C.A. § 522(f)(2) (West 1993), the debtors may avoid Equity One's lien in the sixteen-gauge Harrison–Richardson shotgun and the camera with accessories.[1] A trial was held in the *French* case on December 1, 1994.

In the *Shultz* case, the debtor filed a Motion to Avoid the Lien on August 26, 1994, seeking to avoid a lien held by Pioneer Credit in her Magnavox VCR, diamond ring, 25″ Sanyo television, push lawn mower, and .38 caliber Rossi revolver.[2] Pioneer Credit filed an Objection to Motion to Avoid Lien on September 9, 1994, as amended on October 26, 1994, objecting to the avoidance of its lien in the VCR, diamond ring, and revolver. A trial was held on November 17, 1994.

These are core proceedings. 28 U.S.C.A. § 157(b)(2)(K) (West 1993).

## I

The debtors in both cases seek to avoid liens pursuant to Bankruptcy Code § 522(f)(2)(A), which provides:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been enti-

---

1. The debtors also filed a Motion to Avoid Lien on August 16, 1994, seeking to avoid Equity One's lien in certain items of personal property, including the VCR. Equity One did not timely respond to the August 16, 1994 Motion, and the court, by an Order entered September 2, 1994, avoided Equity One's lien in the VCR and in other specific items of personal property. The debtors erroneously included the VCR in their September 27, 1994 Motion to Avoid Lien. Furthermore, Equity One has conceded that the debtors are entitled to an order avoiding its lien in the stereo system.

2. The *Shultz* case was commenced June 24, 1994, by the debtor's filing of a petition under Chapter 13. The case was converted to Chapter 7 at the debtor's request on August 1, 1994.

tled under subsection (b) of this section, if such lien is—

. . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor[.]

11 U.S.C.A. § 522(f)(2)(A) (West 1993).[3]

■ With respect to the issue of whether Billie Shultz may avoid Pioneer Credit's lien in her diamond ring, § 522(f)(2)(A) allows a debtor to avoid a nonpossessory, nonpurchase money security interest, to the extent it impairs an exemption, in jewelry "held primarily for the personal, family, or household use of the debtor or a dependent of the debtor." Billie Shultz testified that her husband gave her the diamond ring in May 1993 when they married; that she and her husband separated sometime in July or August 1994, at which time she stopped wearing the ring; and that she lost the ring after their separation. However, she also testified that she lost the ring in January 1994 during her move to her sister's home where she currently resides.

The discrepancy in the debtor's testimony can be reconciled by a review of her bankruptcy schedules filed on July 8, 1994, of which the court takes judicial notice. Fed. R.Evid. 201. Her Statement of Financial Affairs recites that she had resided at her current residence for six months prior to the June 24, 1994 commencement of her bankruptcy case, which supports her testimony that she moved to her sister's home in January 1994. Schedule I, entitled "Current Income of Individual Debtors," reports the debtor's marital status at the time of bankruptcy as "[m]arried and living apart," which contradicts her testimony that she separated from her husband and stopped wearing the ring in July or August 1994. Rather, the court concludes that the debtor was mistaken in her testimony that the ring was lost sometime after July or August 1994. Based on her Statement of Financial Affairs, Schedule I, and testimony, taken together, the court finds that the debtor lost the diamond ring in January 1994, prior to the commencement of her case. She has not, therefore, met her burden of proof in establishing that the ring was in her possession when she commenced her bankruptcy case on June 24, 1994.[4] *See Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 937 (8th Cir.1990) (quoting *In re Friedman*, 38 B.R. 275, 276 (Bankr.E.D.Pa. 1984)) (" 'It is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition.' ").

■ Under § 522(f)(2)(A), a lien in jewelry may be avoided "to the extent that such lien impairs an exemption." The debtor claims in her Amendment to Schedule C filed on November 15, 1994, that the diamond ring is exempt under sections 26–2–102 and 26–2–103(a)(1) of the Tennessee Code, which provide:

26–2–102. Personal property selectively exempt from seizure.—Personal property to the aggregate value of four thousand dollars ($4,000) debtor's equity interest shall be exempt from execution, seizure or

---

3. Under the Bankruptcy Reform Act of 1994, this section has been renumbered § 522(f)(1)(B)(i).

4. Numerous courts place the burden on the debtor to prove all elements of § 522(f)(2)(A), including the validity of the exemption. *See In re Rushdi*, 174 B.R. 126, 127 (Bankr.D.Idaho 1994) (requiring debtors to prove not only that the property is listed on their schedules as a claimed exemption but that there is an exemption to which they would have been entitled under § 522(b)); *In re Page*, 171 B.R. 349, 352 (Bankr. W.D.Wis.1994); *In re Mohring*, 142 B.R. 389, 392 n. 9 (Bankr.E.D.Cal.1992), *aff'd*, 153 B.R. 601 (9th Cir. BAP 1993), *aff'd*, 24·F.3d 247 (9th Cir.1994). Some courts place the burden on the creditor to prove the validity of the exemption. *See, e.g., In re Maylin*, 155 B.R. 605, 614 (Bankr. D.Me.1993) (Once the debtor has established entitlement to an exemption "by listing it specifically on his or her ... schedules, designating clearly the basis for each exemption claimed," the "burden shifts to the creditor challenging the exemption as part of its § 522(f) defense to prove that the exemption claim is not proper."). Regardless of where the burden falls in this case, the court finds that both Pioneer Credit and the debtor have established that the ring was not in the debtor's possession when she commenced her bankruptcy case.

attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee.... Such person may select for exemption the items of the owned and possessed personal property ... up to the aggregate value of four thousand dollars ($4,000) debtor's equity interest.

26–2–103. Additional personal property absolutely exempt.—(a) In addition to the exemption set out in § 26–2–102, there shall be further exempt to every resident debtor the following specific articles of personalty:

(1) All necessary and proper wearing apparel for the actual use of himself....

Tenn.Code Ann. § 26–2–102, –103(a)(1) (1980). Section 26–2–102 expressly requires that personal property claimed as exempt be "owned and possessed" by the debtor. Section 26–2–103 is unclear; however, the statute's requirement that the wearing apparel, which may include jewelry, be for the "actual use" of the debtor implies that it must at least be in the debtor's possession.

In order to avoid Pioneer Credit's lien in the diamond ring, Billie Shultz is required to satisfy the elements of § 522(f)(2)(A), including that the lien impairs her exemption in the ring and that the ring is a piece of jewelry "held primarily for the personal, family, or household use of the debtor or a dependent of the debtor." Pioneer Credit is allowed to defend the Motion by claiming the exemption is invalid. The debtor lost her diamond ring in January 1994; therefore, she did not own and possess the ring or hold the ring for her "actual use" when she commenced her bankruptcy case on June 24, 1994. Therefore, the court holds that the debtor may not avoid Pioneer Credit's lien in the ring because it does not impair an exemption as required by § 522(f)(2)(A).[5] Moreover, because the debtor lost the ring before commencing her bankruptcy case, it cannot be "held" for her "personal, family, or household use,"[6] and accordingly, Pioneer Credit's lien encumbering the diamond ring is not avoidable.

## II

The parties disagree on whether the remaining items of personal property are household goods under § 522(f)(2)(A). Congress has, however, not defined household goods as that term is used in § 522(f)(2)(A).[7] Courts generally agree that the term is to be defined liberally. This court has previously defined household goods as goods normally found in today's average household. *In re Holstine*, No. 90–33197, slip op. at 6–7 (Bankr.E.D.Tenn. filed Dec. 30, 1991). After this court's decision in *Holstine*, the Fourth Circuit added a second dimension to its definition of household goods by requiring that a functional nexus exist between the good and the household, i.e., that the property "support and facilitate day-to-day living within

---

5. Although Pioneer Credit has not filed an objection to the debtor's exemption in the diamond ring as required by Fed.R.Bankr.P. 4003(b), Pioneer Credit is allowed to claim that the debtor's exemption is invalid in defending the Motion to Avoid Lien. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Morgan v. FDIC (In re Morgan)*, 149 B.R. 147, 151–52 (9th Cir. BAP 1993); *In re Maylin*, 155 B.R. at 610–13. The court does not hold that the debtor is denied her claim of exemption but does hold that for purposes of § 522(f)(2)(A) the creditor's lien does not impair "an exemption to which the debtor would have been entitled."

6. The debtor has no dependents; therefore, the court need not consider whether the ring could be held for the "personal, family, or household use" of her dependents.

7. The problem that Congress sought to remedy by enacting § 522(f)(2)(A) is explained in legislative history, which has been aptly summarized by the Bankruptcy Court for the Northern District of Indiana:

> Prior to the enactment of the 1978 Bankruptcy Code consumers [sic] lenders would take a nonpossessory, nonpurchase money security interest in household goods, furnishings and appliances essential to the Debtor's ability to maintain his household. The inherent value of most of such collateral was quite often of little importance, for as a practical matter not much more than "garage sale" prices could be obtained for such used chattels on liquidation by the secured party. Nevertheless, the cost and inconvenience of replacement by the Debtor could be considerable to the Debtor, if in fact the secured party were to repossess or foreclose. Accordingly, when the Debtor filed a bankruptcy petition the secured party often used the threat of repossession, rarely carried out, to extract more than he would be able to get if he did a foreclosure or repossession.

*In re Vale*, 110 B.R. 396, 404 (Bankr.N.D.Ind. 1989).

the home, including maintenance and upkeep of the home itself." *McGreevy v. ITT Fin. Servs. (In re McGreevy)*, 955 F.2d 957, 961–62 (4th Cir.1992).

The Fourth Circuit added the functional nexus requirement to its definition of household goods after a thorough analysis of prior cases. *McGreevy* separated the case law on household goods into two categories. The first category of cases defined household goods as "only those goods that are found and used in or around the debtor's home *and* that are necessary to a debtor's fresh start after bankruptcy," and based the definition primarily on the general purpose of the Bankruptcy Reform Act of 1978, which is to provide a debtor with a fresh start. *Id.* at 959; *see* H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6087. The second category of cases defined household goods as "*all* goods typically found and used in or around the home, whether or not they would be considered strictly necessary to a debtor's fresh start." *McGreevy*, 955 F.2d at 960.

In *McGreevy*, the Fourth Circuit rejected both definitions, the first because the "necessary to a fresh start" or "necessity" requirement was not provided for in the statute, and the second because it did not "capture fully the functional nexus between the good and the household that distinguishes a household good from a good that happens (even typically so) to be used in the house." *Id.* at 960–61. In order to remedy these two problems, the Fourth Circuit adopted a definition for household goods that required the good be "typically found in or around the home and used by the debtor or his dependents to support and facilitate day-to-day living within the home, including maintenance and upkeep of the home itself." *Id.* at 961–62. The first part of the definition was adopted because "[a]ny definition that does not incorporate *at least* this requirement is wholly without mooring in the statute." *Id.* at 960 n. 8. The second part of the definition, the "func-

tional nexus" requirement, was adopted based on the following rationale:

> Such a requirement, we believe, is necessary for the term ["household goods"] to have the ordinary, common-sense meaning that was intended by Congress. Any definition that does not include a functional requirement will inevitably suffer from either the underinclusiveness of the necessity definition, because some goods are used to support and facilitate daily life within the home that are not strictly necessary to day-to-day living, or the overinclusiveness of the proximity definition, because some goods are found and used within the home that are not used to support and facilitate home life.

*Id.* at 961 (citation and footnotes omitted).

This court has previously defined household goods using something similar to the first part of the *McGreevy* definition. *See Holstine*, slip op. at 6–7. Based on the analysis set forth in *McGreevy*, the court agrees with the Fourth Circuit's addition of a functional nexus requirement and adopts the following definition of household goods: personal property that is normally found in or around today's average household that is used by the debtor or the debtor's dependents to support and facilitate day-to-day living within the home, including maintenance and upkeep of the home itself.[8]

The court previously determined under its *Holstine* definition that a camera and camera accessories are household goods pursuant to § 522(f)(2)(A) if they are used for personal purposes, such as to take family pictures, instead of for professional or commercial purposes. *See Holstine*, slip op. at 7; *see also In re McCain*, 114 B.R. 652, 653–54 (Bankr.E.D.Mo.1990) (holding that a camera is a household good).

■ In the *French* case, Randall French testified that he only uses the camera and accessories to take family pictures; therefore, the Plaintiffs have proven that their

---

**8.** The court will not adopt a definition that only requires the debtor to prove that the personal property is typically found in a home within the debtor's community. Such a requirement would perhaps discriminate between those living in different communities, with different standards of living. However, a debtor's community may be a factor in determining whether an item of personal property is used by the debtor or debtor's dependents to support and facilitate day-to-day living within the home.

camera and accessories are household goods under the court's *Holstine* definition that requires the good to be normally found in today's average home. The Frenchs have also satisfied the functional nexus requirement adopted today by this court under the authority of *McGreevy*. They use their camera and accessories to memorialize family events which this court finds supports and facilitates day-to-day living within the home. Therefore, the court holds that the Frenchs' camera and camera accessories are household goods under § 522(f)(2)(A). Equity One and Randall and Angela French agree that all other elements of § 522(f)(2)(A) have been satisfied, and accordingly, the lien encumbering the camera and camera accessories is avoidable.

■ Courts generally agree that a VCR fits within the definition of a household good. *See In re Farson*, 172 B.R. 17, 18 (Bankr. N.D.Ohio 1994); *Reid v. ITT Fin. Servs. (In re Reid)*, 121 B.R. 875, 878 (Bankr.D.N.M. 1990); *Barnes v. ITT Fin. Servs. (In re Barnes)*, 117 B.R. 842, 847 (Bankr.D.Md. 1990) ("Videocassette recorders are now as much a part of life in these United States as television itself."); *Barrick v. Avco Consumer Discount Co. (In re Barrick)*, 95 B.R. 310, 313 (Bankr.M.D.Pa.1989). Billie Shultz testified that she uses her VCR for personal entertainment and not for professional or commercial purposes. Under the authority of the majority of cases, the court holds that Billie Shultz's VCR is a household good; it is an item normally found in today's average household and it will support and facilitate the debtor's day-to-day living within her home by providing her with entertainment. Pioneer Credit and Billie Shultz agree that all other elements of § 522(f)(2)(A) have been satisfied, and accordingly, the lien encumbering the VCR is avoidable.

Finally, the court must decide whether a lien in a firearm can be avoided under § 522(f)(2)(A). Under the *Holstine* definition, this court denied a debtor's motion to avoid a lien in a sixteen-gauge Harrison–Richardson shotgun, holding that it was not a household good. *Holstine*, slip op. at 7. However, a bankruptcy court in the northern district of Georgia recently adopted the *McGreevy* definition of a household good and determined that a firearm can be a household good. *See In re Raines*, 161 B.R. 548, 551 (Bankr.N.D.Ga.1993), *aff'd*, 170 B.R. 187 (N.D.Ga.1994).

The Fourth Circuit in *McGreevy* provided bankruptcy courts with a useful analysis of this issue. Regarding whether firearms fit within the definition of a household good, the Fourth Circuit stated:

> There are doubtless many goods found and used in the house for which a *per se* rule will be possible under the definition that we adopt above. For other goods, whether or not they constitute "household goods" will necessarily depend in whole or in part upon the cultural environment of the debtor or the geographic location of the debtor's household. We are not prepared to conclude at this time that firearms *per se* can never be household goods under our newly-adopted definition. . . .

*McGreevy*, 955 F.2d at 962. *McGreevy* notes that the majority view among bankruptcy courts is "that firearms can never constitute household goods," although some courts "would be receptive to claims that particular firearms can be household goods." *Id.* at 962 nn. 12–13. The Fourth Circuit held in *McGreevy* that a shotgun and rifle were not household goods based on evidence that they were used almost exclusively away from the debtors' home and its curtilage for hunting and target practice. *Id.* at 962.

■ The court agrees with the Fourth Circuit's rejection of a per se rule that firearms are not household goods in order to allow for a liberal and flexible application of § 522(f)(2)(A). Therefore, a case-by-case determination is required when a debtor seeks to avoid a lien on a firearm.

Since *McGreevy*, there has been only one case reported in which a court has made an analysis utilizing the *McGreevy* definition in determining whether a firearm is a household good. That court held that the debtors' .357 Magnum Smith & Wesson pistol used to protect their home was a household good because a handgun, such as a .22 caliber revolver or .357 Magnum pistol, as opposed to a rifle or shotgun is typically found in a

home for protection purposes which supports and facilitates day-to-day living within the household. *Raines*, 161 B.R. at 551. However, as previously noted, the majority opinion among courts has been that a firearm is not a household good. *Barnes*, 117 B.R. at 847–48 ("Firearms are sporting goods normally used outside and away from the home. They are not household goods because they are not reasonably necessary for the day-to-day existence of people in the context of their homes."); *In re Weaver*, 78 B.R. 135, 139 & n. 6 (Bankr.N.D.Tex.1987) (holding that firearms are not household goods despite state traditions and increasing crime rates); *Noggle v. Beneficial Fin. Co. (In re Noggle)*, 30 B.R. 303, 305 (Bankr.E.D.Mich.1983) ("A rifle is generally not understood to be a household good."); *see also McGreevy*, 955 F.2d at 962 n. 12, and cases cited therein.

■ In the *Shultz* case, the debtor argues that she keeps a firearm in her home for security. However, Ms. Shultz failed to present adequate evidence that a .38 caliber Rossi revolver is an item normally found in today's average home. Ms. Shultz only testified that her sister, with whom she currently resides, and her brother own guns for protection purposes. Although a gun may typically be found in the home of her siblings, the court will not take judicial notice that a .38 caliber revolver is normally found in today's average home.[9] Moreover, Ms. Shultz purchased the revolver for protection when she lived in her previous home, which had been burglarized and was located in a rural area, but she now lives in the city with her sister who also keeps a gun in the home for their protection. Based on these facts, the court finds that the presence of a second gun, Ms. Shultz's revolver, in her sister's household will not significantly support and facilitate the debtor's day-to-day living within the

home. Therefore, the court holds that Ms. Shultz's .38 caliber Rossi revolver is not a household good under § 522(f)(2)(A).

■ The Motion filed by Randall and Angela French to avoid the lien encumbering their sixteen-gauge Harrison–Richardson shotgun must be denied for similar reasons. No evidence was presented in the *French* case on whether a sixteen-gauge shotgun is normally found in today's average home. Although a gun may typically be found in the Frenchs' home, the court will not take judicial notice that a sixteen-gauge shotgun is normally found in today's average home.[10] Moreover, Randall French testified that his wife, the codebtor Angela French, needs the shotgun to protect herself and their children while he is away from home; however, Randall French also testified that Angela French has never practiced loading or firing the shotgun. A firearm cannot support and facilitate a debtor's day-to-day living within the home if she does not know how to safely or properly use the firearm. The court holds that the Frenchs' sixteen-gauge Harrison–Richardson shotgun is not a household good under § 522(f)(2)(A).

Based on the foregoing findings of fact and conclusions of law, the Motion to Avoid Lien filed by Randall and Angela French will be granted with respect to all items except for the sixteen-gauge Harrison–Richardson shotgun, and the Motion to Avoid the Lien filed by Billie Shultz will be granted with respect to all items except for the diamond ring and the .38 caliber Rossi revolver. Separate orders will be entered in each case.

### ORDER

For the reasons set forth in the Memorandum on Motions to Avoid Liens filed this date, the court directs the following:

---

9. Fed.R.Evid. 201 provides in part:
   (b) Kinds of facts
   A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
   (c) When discretionary
   A court may take judicial notice, whether requested or not.
   (d) When mandatory

   A court shall take judicial notice if requested by a party and supplied with the necessary information.
   In both cases, the debtors have not provided the court with sufficient information to determine whether a .38 caliber revolver or sixteen-gauge shotgun are normally found in today's average home. This fact is "subject to reasonable dispute," and the court is unaware of unquestionably accurate sources that support such a fact.

10. *See supra* note 9.

1. The Motion to Avoid Lien filed by the debtors on September 27, 1994, seeking to avoid the lien of Equity One, Inc. pursuant to 11 U.S.C.A. § 522(f)(2)(A) (West 1993) encumbering a stereo system, sixteen-gauge Harrison–Richardson shotgun, VCR, and camera with accessories, is GRANTED with respect to the stereo system, VCR, and camera with accessories, and DENIED with respect to the sixteen-gauge Harrison–Richardson shotgun. The lien of Equity One, Inc. encumbering the debtors' stereo system, VCR, and camera with accessories is avoided.

2. The Objection to Motion to Avoid Lien filed by Equity One, Inc. on October 3, 1994, is OVERRULED with respect to the stereo system, VCR, and camera with accessories, and SUSTAINED with respect to the sixteen-gauge Harrison–Richardson shotgun.

SO ORDERED.

### ORDER

For the reasons set forth in the Memorandum on Motions to Avoid Liens filed this date, the court directs the following:

1. The Motion to Avoid the Lien filed by the debtor on August 26, 1994, seeking to avoid the lien of Pioneer Credit pursuant to 11 U.S.C.A. § 522(f)(2)(A) (West 1993) encumbering the debtor's VCR, television, lawn mower, diamond ring, and .38 caliber Rossi revolver is GRANTED with respect to the VCR, television, and lawn mower, and DENIED with respect to the diamond ring and .38 caliber Rossi revolver. The lien of Pioneer Credit in the VCR, television, and lawn mower is avoided.

2. The Objection to Motion to Avoid Lien filed by Pioneer Credit on September 9, 1994, as amended on October 26, 1994, is OVERRULED with respect to the VCR, television, and lawn mower, and SUSTAINED with respect to the diamond ring and .38 caliber Rossi revolver.

SO ORDERED.