**In re Ronald James MASON, Debtor.**

**No. 00–20567.**

United States Bankruptcy Court,
D. Idaho.

Oct. 26, 2000.

---

Kenneth L. Anderson, Lewiston, Idaho, for Debtor.

Robert L. Brower, Jones, Brower & Callery, P.L.L.C., Lewiston, Idaho, for Washington Mutual Finance.

S. David Swayne, Moscow, Idaho, Chapter 7 Trustee.

Gary L. McClendon, Boise, Idaho, Office of the U.S. Trustee.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

A chapter 7 debtor seeks to use the power granted by the Code to avoid a creditor's nonpossessory, non-purchase money lien. In doing so, he requires the Court to evaluate whether a gun can be a "household good."

### BACKGROUND AND FACTS

On May 15, 2000, Ronald Mason ("Debtor") filed a voluntary petition under chapter 7. The case was noticed out to creditors as a "no asset" bankruptcy.

Debtor claimed among his very limited assets [1] a 12 gauge shotgun worth $200.00

---

1. Schedule A indicates that Debtor's residence is worth $65,000 but encumbered with

and a Remington 30.06 rifle worth $250.00. *See* Schedule B, filed May 15, 2000 at item no. 8 ("Firearms and sports, photographic, and other hobby equipment"). Schedule B also alluded to the fact that both firearms had been pawned. It turns out Debtor didn't have possession of either at filing, though he later professed an intent to redeem them from the pawn if he was financially able.[2]

Debtor has consistently claimed both firearms exempt, though there has been an evolving (or, perhaps more accurately, revolving) basis for that claim. He asserted on his original schedule C that both firearms were exempt under Idaho Code § 11–605(1)(a), which provides:

(1) An individual is entitled to exemption of the following property to the extent of a value not exceeding five hundred dollars ($500) on any one (1) item of property and not to exceed a total value of five thousand dollars ($5,000) for all items exempted under this subsection:

(a) Household furnishings, household goods, and appliances held primarily for the personal, family or household use of the individual or a dependent of the individual;

(b) If reasonably held for the personal use of the individual or a dependent, wearing apparel, animals, books, and musical instruments; and

(c) Family portraits and heirlooms of particular sentimental value to the individual.

An amendment to schedule C on July 7 claimed exemption of the Remington under § 11–605(7)[3] and the shotgun under § 11–605(10).[4] Also on July 7, Debtor filed a motion under § 522(f)(1)(B) to avoid the nonpossessory, nonpurchase money security interest in the firearms held by Blaser Finance Company, a predecessor to Washington Mutual Finance ("Creditor").[5]

The next amendment of the schedules occurred on August 17.[6] This amendment moved the firearms from item no. 8 of schedule B to item no. 4 ("Household goods and furnishings, [including] audio, video and computer equipment"). Debtor also returned, in this amended schedule C, to the claim of exemption of both firearms under § 11–605(1)(a).

Creditor opposes the attempt of the Debtor to avoid its lien on the two firearms. Hearing on the motion was held on September 12, and the matter submitted. No evidence was presented. Both litigants have taken the position that solely issues of law are raised, and that the matter can be decided upon the pleadings and briefs.

**APPLICABLE LAW**

**A. The requirements of § 522(f)(1)(B)**

Section 522(f)(1)(B) of the Code allows a debtor to avoid certain security interests

$78,000 of secured debt, and Schedule B discloses only $1,730 of personal property assets.

2. *See* Brief in Support of Motion to Avoid Lien, Doc. No. 15, filed August 17, 2000 ("Brief") at 1–2. It's not clear whether the weapons have as yet been retrieved.

3. Section 11–605(7) provides:
(7) An individual is entitled to exemption of one (1) firearm valued at less than five hundred dollars ($500).

4. Section 11–605(10) provides an exemption for:
(10) An individual's aggregate interest in any tangible personal property, not to exceed the value of eight hundred dollars ($800). This "catch-all" exemption was amended effective April, 2000 to add the limitation that

the claim be made only in "tangible" personal property. *See In re Duman,* 00.1 I.B.C.R. 135 (Bankr.D.Idaho 2000).

5. This was actually an amended motion, which specifically referred to the firearms. The original motion simply referred generally to "miscellaneous personal property" as the collateral.

6. Attached to Debtor's August 17 Brief, Doc. No. 15, are an original and two copies of amended schedules B and C, bearing date of August 16. It appears to the Court that the Debtor intended these to be separately filed. *See, e.g.,* Brief at 2. These amendments to the schedules will be deemed filed on August 17, but they will remain as part of Doc. No. 15.

which impair an otherwise allowable exemption:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . .

(B) a nonpossessory, nonpurchase-money security interest in any—

(i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or of a dependent of the debtor;

(ii) implements, professional books or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

 Three separate conditions are thus prerequisite to a debtor's utilization of § 522(f)(1)(B): first, the subject lien must be a nonpossessory, nonpurchase money security interest; second, the security interest must impair an exemption to which the debtor would be entitled;[7] and third, the property of the debtor subject to the lien must fall within the limiting language of § 522(f)(1)(B)(i) through (iii).

That Creditor's lien is nonpossessory and nonpurchase money in nature is conceded. Debtor thus needs to satisfy the other two conditions: the two firearms must be found to fit within the household goods language of § 522(f)(1)(B)(i), and they must also be properly exempt.

## B. The burden of proof, and burden of going forward

 *In re Conley*, 99.1 I.B.C.R. 7 (Bankr.D.Idaho 1999) noted, relying on *Morgan v. Federal Deposit Ins. Corp. (In re Morgan)*, 149 B.R. 147 (9th Cir. BAP 1993):

[A]t a hearing on the motion to avoid a lien under § 522(f), the creditor bears "the burden of proving that the exemptions are not properly claimed. Fed. R.Bankr.P. 4003(c)." *Morgan*, 149 B.R. at 152, n. 3. "[T]he debtor does not initially bear the burden of proof on this issue. Once the lien creditor has come forward with evidence questioning the validity of the exemption, however, the debtor may need to produce evidence supporting the claim of exemption to persuade the court to allow the lien avoidance." *Morgan*, 149 B.R. at 152, n. 4.

99.1 I.B.C.R. at 8, n. 7.

## C. General rules for considering and resolving claims of exemption

 In considering allowance of exemptions, several well-accepted principles guide the Court:

Section 522(b) allows the debtor to exempt property of the estate from administration by the trustee. Idaho has opted out of the federal exemption scheme of § 522. Idaho Code § 11–609. Idaho law therefore controls the validity of the claimed exemption, though this Court interprets and applies the law in bankruptcy proceedings. *In re Collins*, 97.3 I.B.C.R. 78 (Bankr.D.Idaho 1997). A claim of exemption will be valid unless a party in interest or the trustee objects and that objector satisfies its burden of proving that the exemption is improperly claimed. Rule 4003(c). Exemptions are to be liberally construed in order to

---

7. Some bankruptcy courts sit in states which allow use of the exemptions provided by § 522(b)(1) and (d). The majority of states, including Idaho, have opted-out of the federal exemption scheme and exemptions are provided by state law. *See* § 522(b)(2)(A); *see also* Idaho Code § 11–609.

protect the Debtor and his fresh start. Still, the statutory language can't be "tortured" in the guise of liberal construction. *Collins*, 97.3 I.B.C.R. at 79.

*In re DeBoer*, 99.3 I.B.C.R. 101, 102 (Bankr.D.Idaho 1999). *See also, In re Duman*, 00.3 I.B.C.R. 135 (Bankr.D.Idaho 2000); *In re Powell*, 99.2 I.B.C.R. 81, 82 (Bankr.D.Idaho 1999).

### D. Creditor not barred from contesting the exemption

▌ No party here objected to any of the exemptions asserted by Debtor, including the last amendment claiming the firearms as household goods. But a failure to timely object to a claim of exemption under Rule 4003(c) does not bar a creditor from assailing the exemption when defending a § 522(f)(1) motion brought by the debtor. *Conley*, 99.1 I.B.C.R. at 7. Creditor can therefore dispute Debtor's claim that the firearms fall within the exemption provided by § 11–605(1)(a).

## DISCUSSION AND DISPOSITION

### 1. Does prior case law on exemption of firearms provide guidance?

This Court has had several occasions to consider exemption of firearms under Idaho law. The most recent, *In re Mansfield*, 99.1 I.B.C.R. 20 (Bankr.D.Idaho 1999) considered a prior version of § 11–605(1)(a) which provided:

> An individual is entitled to exemption of the following property to the extent of a value not exceeding five hundred dollars ($500) on any one (1) item of property and not to exceed a total value of four thousand dollars ($4,000) per household for all items exempted under this subsection:
>
> > (a) furnishings and appliances reasonably necessary for one (1) household, including one (1) firearm[.]

The debtors in *Mansfield* argued that a rifle was required for hunting and a shotgun for protection. The Court noted that each individual debtor may exempt a firearm under § 11–605(1)(a), but that the statute and decisional law required a showing that the firearms were "reasonably necessary" for the household. While that showing was characterized as "minimal" for the first firearm, it was heightened for the second. An unnecessary firearm would not be exempt. 99.1 I.B.C.R. at 20, citing *In re Biancavilla*, 173 B.R. 930, 94 I.B.C.R. 150 (Bankr.D.Idaho 1994); *In re Leypoldt*, 96.2 I.B.C.R. 69 (Bankr.D.Idaho 1996); *In re Bond*, 96.2 I.B.C.R. 72 (Bankr.D.Idaho 1996). The Court further observed that, while it would allow an exemption where a debtor used the weapon to hunt for food, it would not assume every debtor reasonably required a gun as a matter of personal protection. *Id.*, citing *In re Anderson*, 97.1 I.B.C.R. 7 (Bankr.D.Idaho 1997).

This statute was amended in 1999, and the Idaho legislature eliminated any reference to firearms within § 11–605(1)(a)'s category of household "appliances" and "furnishings." But it added a separate and specific exemption for one firearm per debtor in § 11–605(7). It also eliminated the "reasonably necessary" test from § 11–605(1)(a), and it added "household goods" to appliances and furnishings, together with language providing that all such assets must be held primarily for personal, family or household use.

The changes in the statutory context make the prior case law something less than controlling. However, the Court's focus on and attention to the precise statutory language, and its liberal but not tortured construction of that language, remains instructive.

### 2. May § 11–605(1)(a) be used when § 11–605(7) is available?

▌ Because §§ 11–605(7) and 11–605(10) provide a means of exemption, it is evident that Debtor's later use of § 11–605(1)(a) was not driven by a need to find

a way to exempt the firearms.[8] Rather, it was motivated by Debtor's belief that he needed to qualify the firearms as household goods so that the avoidance powers of § 522(f)(1)(B) could be used.

The first question presented is whether § 11–605(1)(a) can be used since a specific Idaho statute—§ 11–605(7)—expressly provides for exemption of a firearm.

■ *Duman,* 00.3 I.B.C.R. at 137–38, recognized that the goal of statutory construction is to ascertain the "ordinary and commonly understood meaning" by reference to the language used by the legislature. The Court has no guidance from the legislature or the state courts as to whether the creation of a separate statutory exemption for firearms was intended to eliminate the ability of a debtor to claim a gun, shotgun or rifle as a household good under § 11–605(1)(a).

■ The maxim *expressio unius exclusio alterius* [9] arguably supports a denial of the exemption in light of the availability of § 11–605(7) but, the Court concludes, it does not mandate such a result. It is nothing more than an aid to construction of the statute, if recourse to such an aid is necessary.[10] I conclude it is not needed.

■ The Court has little conceptual difficulty in concluding that an item might fall within more than one category of Idaho's statutory exemptions, provided the facts establish any qualifying conditions. For example, an item of jewelry exempt under § 11–605(2) might, on proper proof, also be exempt as an heirloom under § 11–605(1)(c). Similarly, a computer might be a household good under § 11–605(1)(a), as in *In re Cox,* 98.1 I.B.C.R. 24 (Bankr.D.Idaho 1998), or it might be a tool of a trade or business under § 11–605(3). *See, Biancavilla,* 173 B.R. at 933, 94 I.B.C.R. at 152. And of course items claimed under the "catch-all" exemption of § 11–605(10) could very conceivably fall within other exemption provisions.

■ The Court concludes that foreclosing the possibility of exemption of a firearm under § 11–605(1)(a) simply due to the existence of § 11–605(7) is unwarranted. Doing so is not required by the plain language of the statute. Doing so would be contrary to the principle of liberal construction of the exemption statutes. Any abuse can be prevented by requiring the appropriate proof that the firearm qualifies under § 11–605(1)(a), discussed *infra,* and by way of the value caps on the exemptions singly and in the aggregate.

### 3. When are firearms "household goods" under § 522(f)(1)(B)(i) and § 11–605(1)(a)?

Since there is no controlling authority on the question of firearms within current Idaho Code § 11–605(1)(a), and since Debtor's compliance with the almost identical limiting language of § 522(f)(1)(B)(i) must be evaluated in any event, the Court will turn next to authorities considering the issue under this section of the Bankruptcy Code.

Hundreds of decisions have been written on the question of whether a given asset is of a kind covered by § 522(f), and enables

---

8. Debtor was free to seek to change the theory of exemption. *See In re Arnold,* 252 B.R. 778 (9th Cir. BAP 2000) (exemptions may be amended absent bad faith or prejudice). However, Debtor had no legitimate basis, or need, to move the firearms from item no. 8 to item no. 4 of Schedule B.

9. The phrase is a canon of construction which holds that the expression or inclusion of one thing implies the exclusion of the other or the alternative. *See* Black's Law Dictionary (7th ed.1999) at 602.

10. "Such doctrine is not an unimpeachable rule of law ... [and its applicability] to any particular statute depends upon whether the legislative intent appears in clear terms in the statute." *Noble v. Glenns Ferry Bank, Ltd.,* 91 Idaho 364, 367, 421 P.2d 444, 447 (Idaho 1966); *See also, In re Little Lake Industries, Inc.,* 158 B.R. 478, 481–482 (9th Cir. BAP 1993).

the debtor to use the power to avoid liens. *See generally,* Hillinger, *How Fresh a Start?: What Are "Household Goods" for Purposes of Section 522(f)(1)(B)(i) Lien Avoidance,* 15 Bankr.Dev. J. 1 (1998). That article notes, *Id.* at 41–47, the development of three approaches. One is an expansive reading of the Code that favors the debtor, and essentially requires only proof that the good is found in or in proximity to the home. A second, stricter rule requires a showing of "necessity" of the property to daily living. The third approach uses an "intermediate" standard.

This intermediate standard is exemplified by *In re McGreevy,* 955 F.2d 957 (4th Cir.1992) which considered whether firearms qualified for § 522(f)'s special protection. The court stated:

> We adopt … a definition of "household goods" that explicitly incorporates a requirement of a functional nexus between the good and the household. Such a requirement, we believe, is necessary for the term to have the ordinary, common-sense meaning that was intended by Congress…. Any definition that does not include a functional requirement will inevitably suffer from either the underinclusiveness of the necessity definition, because some goods are used to support and facilitate daily life within the home that are not strictly necessary to day-to-day living, or the overinclusiveness of the proximity definition, because some goods are found and used within the home that are not used to support and facilitate home life. Indeed, the absence of such a requirement in the two generally accepted definitions is, we suspect, the cause of the inability of the courts to agree on either definition.
>
> We conclude that the requisite functional nexus exists where—and only where—the good is used to support and facilitate daily life within the house. It is the household good's use *for these purposes* that distinguishes it from a good that is merely located and used within the house. Pots and pans are

household goods *because* they are used to support and facilitate daily household living; a model car collection, by contrast, is not a household good because it serves no such purpose. *Cf.* 20 C.F.R. § 416.1216(a) (for purposes of Social Security Administration regulations, "household goods" defined to include "household furniture, furnishings and equipment which are commonly found in or about a house and are used in connection with the operation, maintenance and occupancy of the home").

> We therefore hold that "household goods" under section 522(f)(2)(A) [now § 522(f)(1)(B)(i)] are those items of property that are typically found in or around the home and used by the debtor or his dependents to support and facilitate day-to-day living within the home, including maintenance and upkeep of the home itself.
>
> There are doubtless many goods found and used in the house for which a *per se* rule will be possible under the definition that we adopt above. For other goods, whether or not they constitute "household goods" will necessarily depend in whole or in part upon the cultural environment of the debtor or the geographic location of the debtor's household. We are not prepared to conclude at this time that firearms *per se* can never be household goods under our newly-adopted definition, and we need not go so far on the record before us. Even assuming that firearms can be household goods under certain circumstances, it is clear that Mrs. McGreevy's firearms are not household goods.

955 F.2d at 961–62 (footnotes omitted) (emphasis in original).

The ultimate conclusion that the McGreevys' firearms did not qualify comes from the fact that there was no functional nexus. Those debtors lived in a townhouse development. They used the rifle for sport hunting and both the rifle and shotgun for target practice, all well away

from the home and its curtilage. 955 F.2d at 962.[11]

Notwithstanding that the "vast majority of bankruptcy courts" flatly refuse to allow firearms as household goods, *McGreevy*, 955 F.2d at 961, n. 12, several courts have followed *McGreevy* and considered the possibility that firearms could qualify, provided the debtor established that the weapon was actually used in such a way as to facilitate the daily operation and support of the household. *See, In re Rhines*, 227 B.R. 308, 310 (Bankr.D.Mont.1998) (rifle and shotgun used solely to feed debtor and his dependents; debtor established functional nexus); *Matter of Crawford*, 226 B.R. 484, 485 (Bankr.N.D.Ga.1998) (debtors proved rifle was solely for defense, and not used for hunting or otherwise); *In re French*, 177 B.R. 568, 575 (Bankr. E.D.Tenn.1995) (considered possibility of exemption, but ultimately found functional nexus lacking, noting that one debtor didn't even know how to properly and safely load and use the firearm; court also rejected the proposition that guns are "normally" found in the "average" home); *In re Raines*, 161 B.R. 548, 551 (Bankr. N.D.Ga.1993), aff'd, 170 B.R. 187, 188 (N.D.Ga.1994) (adopting *McGreevy's* functional nexus test and finding debtors established adequate factual basis for finding revolver used for household defense).

■ The Court agrees with the approach reflected by these decisions. Inasmuch as debtors' circumstances vary from case to case, it makes sense to conclude, as *McGreevy* and the foregoing cases do, that *per se* rules will not suffice. Debtors should be provided the opportunity to attempt to establish, upon the evidence, that an asset is a household good because there is a functional nexus between that asset and the debtor's household, and it is used to support and facilitate daily life therein.

The question then becomes, in respect to this case, one of the nature and quantity of proof required to establish that a firearm is also a household good. As noted, in *McGreevy* the debtors fell shy of the mark. An example of a case where the debtors met their burden comes from our neighboring State of Montana. *Rhines* stated:

This is a case of first impression in this district, on the issue of whether firearms such as the rifle and shotgun may be the subject of lien avoidance under § 522(f)(1)(B). This Court holds that they may be when used as the primary means of providing debtors with meat for food.

There is a split of authority on whether firearms may fall within the definition of "household goods" for purposes of § 522(f)(1)(B). Some courts hold that firearms may be household goods where there is a relationship between the firearm and living in the household, or in other words a "functional nexus" between the good and the household. *In re Raines*, 170 B.R. 187, 188 (N.D.Ga. 1994), citing *In re McGreevy*, 955 F.2d 957, 961–62 (4th Cir.1992)[.]

The vast majority of bankruptcy courts have held that firearms can never constitute household goods. *See McGreevy*, 955 F.2d at 962, n. 12 (listing cases). However, in the instant case the rifle and shotgun are the Debtors' primary means of obtaining meat for food. Chad testified that he uses the rifle to hunt for deer, antelope and elk, and that he uses the shotgun to hunt grouse and turkey. Chad has hunted every year since 1988, and his hunting is the Debtors' primary means of obtaining meat and fowl to feed themselves and their daughter, except for an occasional chicken they buy. He does not use the rifle for target shooting or other purposes. Chad's testimony is uncontroverted and unimpeached.

---

11. Only as an "afterthought" did those debtors allege any use of or need for the firearms for personal protection, and the court refused to find this adequately proved the requisite nexus. *Id.*

Based on this record, the Court finds that the rifle and shotgun enable the Debtors to feed themselves, and thus to live in a usual and comfortable manner. Indeed, it is hard to imagine a more "functional nexus" between a good and a household than the nexus between a firearm and the household that depends upon it for food. *Raines,* 170 B.R. at 188.

227 B.R. at 309–10. While this may not be the only type of evidence which will suffice,[12] it illustrates the degree and nature of the factual proof required for qualification under § 522(f)(1)(B)(i).

The Idaho legislature amended § 11–605(1)(a) in such a fashion that it now mirrors in large degree the language of § 522(f)(1)(B)(i). In light thereof, and in the absence of controlling interpretation of that new section of the Idaho Code, the Court will apply the same test to the question of qualification of an asset as a "household good" under § 11–605(1)(a) as it does to qualification of assets under § 522(f)(1)(B)(i). Such an approach follows, without torturing, the plain language of the statute.[13]

### 4. Do Debtor's rifle and shotgun qualify under § 522 and § 11–605?

 Since firearms are, under the foregoing authorities, neither *per se* included nor *per se* excluded from the category of household goods, the resolution of the issue requires proof of the use made of the firearms by this Debtor and the functional nexus between them and Debtor's household.

As noted earlier, neither party presented evidence in this matter, believing that only legal issues were raised. The only potentially relevant fact established by the balance of the record is that Debtor pawned both the rifle and shotgun prior to bankruptcy. This would imply a lack of use of the firearms under a *McGreevy–Rhines* analysis.

Since there appears to be reason for questioning the validity of the exemption, Debtor faces the burden of supporting the claim and persuading the Court the lien avoidance motion is proper. *Morgan,* 149 B.R. at 152.

## CONCLUSION

Under the circumstances, the Court concludes that the Debtor should be provided an opportunity to support his motion at an evidentiary hearing. Debtor shall, within fifteen (15) days of the date of this decision, file a notice of hearing and serve the same upon Creditor and the Trustee. If he does not so schedule a hearing, his motion under § 522(f) will be denied.

A separate order consistent herewith will be entered.

---

12. For example, the courts in *Raines* and *Crawford* were provided competent proof of defensive use.

13. This evidentiary showing is required for firearms only when claimed exempt under § 11–605(1)(a); no qualifying or limiting condition, other than a maximum value, appears in § 11–605(7).